UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
*Norfolk Division*

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                        Case No. 2:21-po-00041

STEVEN C. VANKESTEREN,

      Defendant.

## **MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS**

Steve Vankesteren, by counsel, submits the following Memorandum in Support of his Motion to Suppress.

### **Facts**

1.      On October 8, 2020, Federal Wildlife Officer[1] Darin Dick came upon agricultural property owned by Mr. Vankesteren. He noticed a pond south of the roadway and "fresh tire tracks going along the edge" of the field leading into the woods. The pond is a commercial retention pond that serves irrigation facilities on a neighboring commercial farm owned by Mr. Vankesteren. The property is marked with multiple no trespassing signs.

2.      Officer Dick parked along the edge of the field and walked back where the dirt road leads into the woods. Once the pond was close enough, he heard American Wood Duck calls coming from the pond and saw several ducks in flight. Continuing, he went deeper into the posted property and observed shelled corn in and on the edge of the pond. Officer Dick took photographs of the shelled corn and left the area.

---

[1] Officer Dick is a Federal Game Agent acting under authority of 16 U.S.C. § 706.

3. On October 9, 2020, Officer Dick entered the property without a warrant or permission and secreted himself to conduct surveillance. No hunting activity was observed.

4. On October 10, 2020, Officer Dick again entered the property and secreted himself to conduct surveillance. At around 0615, a white pickup truck entered the property, Mr. Vankesteren parked his vehicle, exited, and sat in a blind near the pond. About half an hour later, Mr. Vankesteren started shooting his shotgun multiple times and his dog retrieved harvested ducks. Officer Dick radioed for back up, left his covered position, and started walking to Mr. Vankestern to make contact. The entire interaction was captured on Officer Dick's body camera video.

5. Officer Dick did not have a search warrant at any time while he was on the property.

6. Officer Dick approached Mr. Vankesteren as he was collecting his gear and struck up conversation. Officer Dick even offered to help him pack up his gear, which Mr. Vankesteren refused by saying "No, it's alright, I am leaving now." Then the following exchange ensued:

| | |
|---|---|
| Officer Dick: | Mr. Vankesteren. I'm not hear for just nothin'. I know you're probably a little bit nervous right now. Just take a deep breath, OK, I know its baited. You know its baited. It's not the end of the world. So, let's just get your…are you done for the day? |
| Vankesteren: | Yea. |
| Officer Dick: | Let's just get your stuff packed up. And we will get it figured out, ok? Like I said, it's not the end of the world. You with me? |
| Vankesteren: | (inaudible) I'm ready to go. |
| | [Mr. Vankesteren turns toward his truck and away from the officer and takes a step before the officer interrupts] |
| Officer Dick: | Alright, well, I tell you what. I see an overlimit and the bait, I understand you want to get the hell out of here, but we are past that point. So, let's just get you packed up we will get up to the truck, you're not going to get arrested or anything like that, it's just going to be some paperwork. |

|  |  |
|---|---|
|  | Ok?  So, let's just not freak out.  Let's just relax and let's get through it.  I'm beggin' you.  Let's just do this easy. |
| Vankesteren: | Well, it's not going to be easy. |
|  | [Mr. Vankesteren starts walking towards his truck] |
|  | You have to leave my property.  Unless you have a search warrant, you have to leave. |
| Officer Dick: | Well, I understand that, but you know, you're wrong, number one. |
|  | [Officer Dick is following Mr. Vankesteren towards his truck] |
|  | I can't let you leave, sir.  There is another officer that should be pulling in here any second. |
|  | [They reach the bed of Mr. Vankesteren's truck and Officer Dick positions himself between Mr. Vankesteren and the driver's side door] |
|  | I understand where you are coming from with the warrant, but it's not necessary. A warrant is not needed anywhere outside your residence, or the area outside your residence. |
| Vankesteren: | No, that's not the way the law reads. |
| Officer Dick: | Ok, well I tell you what, we are going to go forward today with what I have to do, and anything else after that has to be handled with the Courts.  I am trying to reason with you, I really am. |

7.     Shortly after this exchange, CPO Bratton arrived and parked his vehicle on the lane behind Mr. Vankesteren blocking his vehicle in and positioned himself on the back left of Mr. Vankesteren.  They argue further about the need for a warrant and Mr. Vankesteren's belief[2] that the law requires game wardens to have a warrant.  After the exchange and, without the benefit of

---

[2] Mr. Vankesteren did not mention 16 U.S.C. 706, but the wording of that statute is the source of his belief that no search by a Federal Wildlife Officer is permitted without a warrant.

*Miranda* warnings, Officer Dick interrogated Mr. Vankesteren and he made potentially inculpatory statements regarding the offenses charged.

## Law Applicable to the Motion

8.  With regard to statements, *Miranda* warnings are required when a subject is interrogated while in custody. *Miranda v. Arizona,* 384 U.S. 436 (1966). The test for determining whether an individual is "in custody" for *Miranda* purposes is whether, under the totality of the circumstances, the "suspect's freedom of action is curtailed to a degree associated with formal arrest." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) (internal quotation omitted). The key question is whether, viewed objectively, "a reasonable man in the suspect's position would have understood his position" as being "in custody." *Id.* at 422. *Accord Stansbury v. California,* 511 U.S. 318, 322, 325 (1994); *United States v. Hashime,* 734 F.3d 278, 282-83 (4th Cir. 2013); *and United States v. Hargrove*, 625 F.3d 170, 178 (4th Cir. 2010). "[T]he Supreme Court has emphasized…that the test for whether an interrogation was custodial is an objective one. '[T]he subjective views harbored by either the interrogating officers or the person being questioned are irrelevant." *Hashime*, 743 F.3d at 283-85 (in spite of defendant's tone and demeanor, which were cooperative and calm, other objective factors demonstrated he was "in custody"). In addition, the fact that a defendant is not formally arrested is not a weighted factor. *United States v. Colonna*, 511 F.3d 431, 435 (4th Cir. 2007) (finding a defendant was "in custody" for *Miranda* purposes despite not being formally arrested for two years).

9.  With regard to the authority of Federal Wildlife Officer's to make searches, the United States Code provides that such agents:

> [s]hall have the power, without warrant, to arrest any person committing a violation of said sections (16 U.S.C. 703-711) in his presence or view and to take such person immediately for examination or trial before an officer or court of competent

>jurisdiction; …and shall have authority, **with a search warrant**, *to search any place*.

16 U.S.C. § 706 (emphases added); *see also, Aiuppa v. United States*, 338 F.2d 146, 148 (1964). Section 706 also authorizes judges and commissioners, upon a proper oath showing probable cause, to issue warrants in such cases.

10. While the Fourth Circuit has not had occasion to address the language in Section 706 that provides search authority only by warrant, the Tenth Circuit has. In *Aiuppa,* Federal Game Officers searched the defendant's vehicle without consent, not incident to lawful arrest, and without a warrant. The issue submitted to the court was weather the agents, acting under their authority as Federal Game Officers, "were impowered to search and seize without a warrant for probable cause." *Id.* Holding the search was *unlawful*, the Tenth Circuit observed that the government's premise is flawed in that it "assumes agents had the power to make a warrantless search on probably cause – a power which the statute (§ 706, supra) does not grant and, by plain implication, withholds from these special enforcement Agents." *Id.* Continuing, the Tenth Circuit found that "[w]hile the statute authorizes an arrest without a warrant for violations committed in the Agent's presence or view, it **does not authorize a warrantless search**." *Id.* (emphasis added). Instead, Congress has expressly delegated search authority to the courts to decide upon a showing of probable cause.

### Application of Legal Principals to this Case

Mr. Vankestern seeks suppression on two bases, and will address each in turn.

i. *Mr. Vankesteren's un-Mirandized confession should be suppressed*

11. In this case, the totality of objective facts demonstrates that the reasonable person, in Mr. Vankesteren's position would have understood that he was placed in custody by Officer Dick. First and foremost, Mr. Vankestern tried to leave. He refused to speak voluntarily to Officer

Dick and walked away from him towards his vehicle. Officer Dick then tells him "I can't let you leave, sir" and advises that another office is in route as well. Doubling down on is verbal promise not to let Mr. Vankestern leave, Officer Dick positions himself between Mr. Vankesteren and the driver's door of his vehicle. Within a minute and five seconds[3], another officer pulls up on the lane behind Mr. Vankesteren and approaches him from the rear.

12. Secondly, the officers had already completed their investigation by the time Officer Dick told Mr. Vankesteren he was not going to let him leave. Indeed, Officer Dick said he already knew the pond was baited and that an over limit of ducks was taken. Accordingly, this was not an investigative detention.

13. Finally, this was a police-dominated environment. While the number of police was relatively small, the force and presence of police were such than any person would reasonably believe they could not leave. Indeed, Mr. Vankesteren was never told he was allowed to leave. To the contrary, while told he was not going to be arrested, he was specifically told he could not leave the area. At no time until the officer interrogated Mr. Vankesteren and got the statements he wanted (*i.e.*, about knowledge of the baited pond) did the custodial nature of the encounter change. After Mr. Vankesteren made arguably inculpatory statements, the officers on scene broke their posture, helped him pack up, checked his weapon, and permitted him to pack it and go about his business.

---

[3] Officer Dick posts himself on the driver's side rear quarter panel of Mr. Vankesteren's vehicle at 05:19 of the body video. CPO Bratton pulls up in frame at 06:25 and walks up on Mr. Vankesteren at 06:59.

ii.     *The evidence should be suppressed because Officer Dick acted outside of the authority bestowed on him by 16 U.S.C. § 706.*

14.     Officer Dick did not have a warrant at anytime when he was investigating Mr. Vankesteren's property or the crimes that he eventually charged him with.  This very issue was litigated in *Aiuppa*.  There, federal wildlife officers had no warrant when they searched the defendant's vehicle and without consent.  Holding the officers needed a warrant under 16 U.S.C. 706, the Tenth Circuit Court of Appeals found the search was unlawful and suppressed the evidence.  The basis for suppressing the evidence was because the officers were limited to only making searches with a warrant by the plain language of 16 U.S.C. 706.

15.     Counsel must inform the Court that a non-binding district court in the Fourth Circuit has considered this issue and found the opposite.  In *United States v. Swann*, 377 F. Supp. 1305 (D. Md. 1974), the defendant was convicted of aiding and abetting the taking of migratory waterfowl by using bait.  Agents entered the property without a search warrant and took some of the bait as evidence.  The District Court of Maryland did not believe that Section 706 created a warrant requirement where one is not otherwise required by the Fourth Amendment. Distinguishing itself from *Aiuppa*, the Maryland court found that the open fields doctrine excluded Fourth Amendment principals and, because a warrant would have been required in *Aiuppa*, its holding was not inconsistent.

16.     Mr. Vankesteren submits that the *Swann* case, and others that similarly hold are wrong because each case framed the issue in terms of Fourth Amendment jurisprudence, when the proper analysis should begin with the Congressional restraint on Federal Game agent's authority.

17.     First, when court's interpret statutes, the goal is to effectuate Congress's intent. *United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010), and this is accomplished by first examining the text of the statute, *Holland v. Big River Minerals, Corp.*, 181 F.3d 597, 603 (4th

Cir. 1999). When a statute is clear, courts are bound to follow the meaning of the plain text, "[a]bsent... clearly expressed legislative intent to the contrary." *Abdelshafi*, 592 F.3d at 607 (quoting *United States v. Bell*, 5 F.3d 64, 68 (4th Cir. 1993)) (internal quotation marks omitted). The language in Section 706 is plain and unambiguous. *Aiuppa*, at 148 ("by plain implication [the power to search without a warrant] is withheld from these special enforcement agents."). Accordingly, this Court should first look to the Congressional authority, as opposed to the Fourth Amendment.

18. Second, Section 706's limitation is consistent when compared to other statutory authorization of police power. For instance, the search authority of the Federal Bureau of Investigation is not limited like the search authority of agents like Officer Dick. The FBI derives its power from 18 U.S.C. § 3052 which permits its agents to "carry firearms, serve warrants and subpoenas issued under the authority of the United States and make arrests without warrant for any offense committed in their presence, or for any felony cognizable under the laws of the United States…" Similarly, the ATF, "as well as any other investigator or officer charged by the Attorney General with the duty of enforcing any of the criminal, seizure, or forfeiture provisions of the law of the United States" have identical powers as the FBI. 18 U.S.C. § 3051. Notably absent from both of these law enforcement empowering statutes is the *limitation* imposed on Federal Game officers that searches of "any place" must be by warrant.

19. Finally, because Congress chose to use different language when empowering different enforcement officers, this Court should not turn a blind eye. As noted by the Fourth Circuit, "[c]ourts indulge a strong presumption that Congress expresses its intent through the language it chooses. Therefore, when the terms of a statute are clear and unambiguous, our inquiry ends and we should stick to our duty of enforcing the terms of the statute as Congress has drafted

it." *United States v. Roper*, 462 F.3d 336, 338 (4th Cir. 2006) *citing United Kingdom Ministry of Def. v. Trimble Navigation Ltd*., 422 F.3d 165, 171 (4th Cir. 2005) (internal quotation marks omitted). "We assume that the legislature used words that meant what it intended; that all words had a purpose and were meant to be read consistently; . . . and that a statute is not self-contradictory or otherwise irrational." *See Salomon Forex, Inc. v. Tauber*, 8 F.3d 966, 975 (4th Cir. 1993). With these principals in mind, it is clear that Congress chose to limit the authority of Officer Dick from coming upon Mr. Vankesteren's property, open field or not, without a warrant. Certainly, "any place" cannot be read to exclude fields.

## Conclusion and Prayer for Relief

For the reasons stated herein, Mr. Vankesteren prays this Court will grant his Motion and ORDER the suppression of his un-*Mirandized* statements and of all evidence taken, collected an seized in violation of 16 U.S.C. 706, and for such other relief as the Court deems fair, just and appropriate.

                                               **STEVEN C. VANKESTEREN**

                                               By:___*/s/ Adam M. Carroll*_____
                                                      Of counsel

Adam M. Carroll, Esq.
VSB #68017
Wolcott Rivers Gates
200 Bendix Road, Suite 300
Virginia Beach, VA 23452
Ph: (757) 497-6633
Fax:(757)687-3655
acarroll@wolriv.com
*Counsel to Steven C. Vankesteren*

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 3rd day of November 2021, the foregoing Memorandum in Support of Motion to Suppress filed on the EM/ECF system which will generate notices to all registered users, as follows:

Dee Sterling, US Attorney
US Attorney's Office
101 W. Main Street, Suite 8000
Norfolk, VA 23510
P: (757) 323-7627
*Counsel for United States of America*

                                                */s/ Adam M. Carroll*
                                                  Adam M. Carroll